IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GAYLA JERRELL,<br><br>  Plaintiff,<br><br>v.<br><br>THE LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>  Defendant. | Civil Action No. 1:25-cv-166 |

**COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA**

Plaintiff, Gayla Jerrell, makes the following representations to the Court for the purpose of obtaining relief from Defendant's refusal to pay long term disability (LTD) benefits due and continue life insurance coverage with premium waiver under an ERISA employee benefit plan, and for Defendant's other violations of the Employee Retirement Security Act of 1974 ("ERISA"):

**JURISDICTION AND VENUE**

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)). Plaintiff's claims "relate to" "employee welfare benefits plan[s]" as defined by ERISA, 29 U.S.C. § 1001 *et seq*. and the subject Benefit Plan constitutes "plan[s] under ERISA."

2. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1 provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

1

3. Venue is proper within the Northern District of Indiana pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

4. Plaintiff, Gayla Jerrell, (hereinafter "Plaintiff" or "Mrs. Jerrell") is currently a resident of Douglas County, Nebraska.

5. Defendant, The Lincoln National Life Insurance Company (hereinafter "Lincoln" or "Defendant"), is an insurance company authorized to transact the business of insurance in this state, and may be served with process through its registered agent, Corporation Service Company, at 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

6. Upon information and belief, Defendant Lincoln is the underwriter of Group Disability Policy No. GD/GF3-840-444809-01, issued to Plaintiff's employer, Charter Communications, Inc., and is the party obligated to pay benefits and to determine eligibility for disability benefits under the Plan.

## FACTS

7. Plaintiff was employed by Press Ganey Associates, Inc. as a Patient Experience Advisor.

8. By virtue of her employment, Plaintiff was enrolled in Press Ganey Associates, Inc.'s Disability Plan (the "Plan"), an ERISA employee welfare benefit plan.

9. Benefits under the Plan are insured by Lincoln under Group Disability Policy No. GF3-840-444846-01, issued by Lincoln to Press Ganey Associates, Inc.

10. The Plan also provides that a participant's coverage will be continued, and life insurance premiums will be waived if the participant becomes disabled while covered under the

2

life insurance policy. Such benefits are termed Life Waiver of Premium ("LWOP") benefits under the Plan.

11. Plaintiff is a participant or beneficiary of the Plan and is covered by the policies that provide LTD and life insurance benefits under the Plan.

12. Plaintiff ceased work on March 2, 2021, while covered under the Plan, due to a disability stemming from fibromyalgia, Chronic Fatigue Syndrome, polyneuropathy in her lower extremities, sleep apnea, cervical spondylosis, SI joint dysfunction, and residual physical and cognitive impairments from her 2021 stroke.

13. As a result of Plaintiff's condition, she experiences chronic pain, fatigue, vision loss, and cognitive impairments including deficits in cognitive flexibility, abstract reasoning, problem-solving, and adaptive responding, all of which prevent Mrs. Jerrell from performing the material duties of her own or any occupation.

14. Plaintiff has been and continues to be disabled as defined by the provisions of the Plan and LTD and life insurance policies.

15. Plaintiff timely filed an application for long term disability benefits under the Plan.

16. Defendant approved Plaintiff's claim for long term disability benefits, and paid benefits from January 26, 2022 to February 27, 2024.

17. As of February 28, 2024, Defendant denied Plaintiff's claims for ongoing LTD and Waiver of Premium benefits, stating that she had the ability to perform her own and additional sedentary-level occupations.

18. Defendant based its decision on its two internal file reviewing doctors' opinions that Plaintiff has sedentary and/or light-level abilities. Defendant also based its decision on its

internal vocational consultant who utilized the restrictions from Defendant's file-reviewing doctors and determined that Mrs. Jerrell would be capable of performing her own, and four other sedentary-level occupations.

19. Plaintiff filed a timely appeal, and submitted updated medical records, a cognitive function assessment, a medical opinion form, sworn declarations, a symptom log, and a vocational evaluation report by Ashley Johnson, MS, CRC, CLCP.

20. The cognitive function assessment was performed by Dr. Bahareh Talei, who found that Mrs. Jerrell lacks the executive functioning, memory, processing speed, verbal fluency, attention and concentration skills needed to perform work at any occupation.

21. The medical opinion form was completed by Mrs. Jerrell's primary care provider, Zaynab Said, PA-C, who reported that Mrs. Jerrell can only sit for one hour out of an 8-hour workday and cannot stand and walk for even one hour out of an 8-hour workday. PA-C Said further opined that Mrs. Jerrell's pain, fatigue, and other limitations would interfere with her reliably attending an 8-hour per day, 40-hour work week. She also reported that Ms. Jerrell's medical conditions and medications would cause lapses in concentration and memory on a regular basis to the extent that she could not reliably follow work instructions and attend to tasks. PA-C Said opined that Ms. Jerrell has difficulty using her hands and can only perform fine manipulation, typing, writing, and grasping small objects for less than 1/3 of the workday.

22. Ashley Johnson, MS, CRC, CLCP reviewed the evidence and prepared a vocational evaluation report. Ms. Johnson concluded that Mrs. Jerrell meets the policies' definition of Disability as she has several documented limitations that "eliminate Mrs. Jerrell's ability to perform a skilled occupation, including her own occupation or any occupation," including:

- impairments in executive functioning, including difficulties with cognitive flexibility, abstract reasoning, problem-solving, and adaptive responding;

- poor abilities to concentrate, persist and maintain pace, deal with stress of ordinary work; demonstrate reliability; persist at assigned tasks; and to timely complete tasks commonly found in work settings;

- deficits in short-term/working memory, slowed processing speed and problems with attention and concentration;

- difficulty initiating and completing daily activities at home and driving independently on certain medications; and

- inability to perform at a consistent pace without an unreasonable number and length of rest periods.

23. Ms. Johnson also notes that Mrs. Jerrell has physical limitations which preclude her from being able to perform any level of competitive work.

24. By letter dated October 28, 2024, Defendant indicated it would deny Plaintiff's appeal and provided Plaintiff an opportunity to review and respond to the new evidence and/or rationale for Defendant's proposed adverse decision.

25. Defendant's new evidence included three file-reviews from physicians board-certified in ophthalmology, neuropsychology, and physical medicine and rehabilitation respectively. The physician board-certified in neuropsychology reviewed the results of Mrs. Jerrell's cognitive function assessment and opined that the results do not support Dr. Talei's conclusion that Mrs. Jerrell lacks the cognitive capacity for work.

26. In response, Plaintiff provided updated medical records, an updated symptom log, and a rebuttal letter from Dr. Talei responding to the neuropsychologist's file-review.

27. In her rebuttal letter, Dr. Talei explains why the file-review's opinion is incorrect and why the findings in her cognitive function assessment report are valid and reliable. Specifically, Dr. Talei explained:

> The CFA report reflects a comprehensive and accurate portrayal of her cognitive limitations, supported by validated remote testing tools, clinical observations, and research based interpretations. Addressing the points in Dr. Strebler's review, this response highlights the CFA's alignment with current research on remote cognitive assessments, the appropriateness of the SIMS in evaluating symptom authenticity, and the direct impact of her medical conditions on cognitive functioning. Each element of the CFA report underscores the necessity of considering Mrs. Jerrell's cognitive impairments in the context of her significant health challenges, which, based on research, severely affect her ability to perform complex professional tasks.

28. By letter dated December 5, 2024, Defendant provided Plaintiff an opportunity to review and respond to an addendum report by its file-reviewing physician. In his report, the file-reviewer objects to Dr. Talei's findings that Mrs. Jerrell has impaired attention, memory, and executive functioning which directly impact her ability to perform complex job functions.

29. By letter dated December 18, 2024, Plaintiff responded by explaining why the file-reviewing physician's opinion is factually unsupported by the results of the cognitive function assessment including stating that the file-reviewing physician incorrectly asserted that Dr. Talei did not include any test for attention because Dr. Talei reported, "Nonperseverative Errors score of 31, which falls within the 3rd percentile (the borderline impaired) indicates difficulties with working memory, *attention*, and the ability to generate novel problem-solving approaches." (emphasis added).

30. By letter dated December 24, 2024, Defendant denied Plaintiff's appeal and stated its decision was final. In reaching this decision, Defendant relied on its file-reviewing

6

consultants, who disagreed with Plaintiff's examining physicians and found no medical support for any restrictions despite the submitted evidence supporting disability.

31. Defendant's December 24, 2024 letter confirmed that Plaintiff had exhausted her administrative remedies and had a right to bring a lawsuit under ERISA § 502(a) to challenge the denial of her benefits.

32. Plaintiff has exhausted her administrative remedies under the Plan.

33. Defendant would pay any benefits due out of its own funds.

34. Defendant owed Plaintiff duties as a fiduciary of the ERISA Plan, including the duty of loyalty.

35. Defendant was under a perpetual conflict of interest because the benefits would have been paid out of its own funds.

36. Defendant allowed its concern over its own funds to influence its decision-making.

37. Defendant breached its fiduciary duties to Plaintiff, including the duty of loyalty

### FIRST CAUSE OF ACTION
### FOR PLAN BENEFITS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

PLAINTIFF incorporates the allegations contained in the above paragraphs as if fully stated herein and says further that:

38. Under the terms of the Plan and LTD Policy, Defendant agreed to provide Plaintiff with LTD benefits in the event that Plaintiff became disabled as defined by the Plan.

39. Plaintiff became disabled and entitled to benefits under the terms of the Plan.

40. Defendant failed to provide LTD benefits due under the terms of the Plan, and this failure constitutes a breach of the Plan.

41. The decisions to deny benefits were wrong under the terms of the Plan.

42. The decision to deny benefits and decision-making processes were arbitrary and capricious.

43. The decision to deny benefits was influenced by the Defendant's financial conflict of interest.

44. The decision to deny benefits was not supported by substantial evidence in the record.

45. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which she would have been entitled to under the Plan.

46. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered damages under the Plan, plus interest and other damages, for a total amount to be determined.

### SECOND CAUSE OF ACTION
### FOR LIFE INSURANCE PLAN BENEFITS AGAINST THE DEFENDANTS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

PLAINTIFF incorporates the allegations contained in the prior paragraphs as if fully stated herein and says further that:

47. Under the terms of the Plan, Defendant agreed to provide Plaintiff with LWOP benefits in the event that Plaintiff became disabled as defined by Plan.

48. Plaintiff is disabled and entitled to benefits under the terms of the Plan.

49. Defendant failed to provide benefits due under the terms of the Plan, and these denials of benefits to Plaintiff constitute breaches of the Plan.

50. The decisions to terminate benefits were wrong under the terms of the Plan.

51. The decisions to terminate benefits and decision-making processes were arbitrary and capricious.

52. The decisions to deny benefits were not supported by substantial evidence in the record.

53. As a direct and proximate result of the aforementioned conduct of Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which he would have been entitled to under the Plan.

54. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE. Plaintiff requests that this Court grant her the following relief in this case:

55. Plaintiff's reasonable attorney fess and costs;

56. Such other relief as this Court deems just and proper;

**On Plaintiff's First Cause of Action:**

57. A finding in favor of Plaintiff against Defendant;

58. Damages in the amount equal to the disability income benefits to which she was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

59. Prejudgment and postjudgment interest;

60. An Order requiring the Plan or appropriate Plan fiduciary to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan.

61. An Order requiring Plan or appropriate Plan fiduciary to provide Plaintiff with any other employment benefits to which she would be entitled pursuant to a finding that she is disabled under the Plan or under any other employee welfare benefit plan;

**On Plaintiff's Second Cause of Action:**

62. A finding in favor of Plaintiff against Defendant; and

63. An Order requiring the Plan or appropriate Plan fiduciary to reinstate her life insurance benefits and pay continuing LWOP benefits in the future so long as Plaintiff remains disabled under the terms of the Plan.

Plaintiff further requests that the Court order Defendant to provide Plaintiff with a bound copy of the ERISA record consecutively paginated.

Dated this 8th day of April, 2025.

Respectfully submitted,

ERIC BUCHANAN & ASSOCIATES, PLLC
ATTORNEYS FOR PLAINTIFF

BY:   /s Kaitlyn Barciszewski
      Kaitlyn Barciszewski* (TN Bar #041568)
      414 McCallie Avenue
      Chattanooga, TN 37402
      (423) 634-2506
      FAX: (423) 634-2505
      kbarciszewski@buchanandisability.com
      *Pro Hac Vice Application to follow